UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DIANA MCGUIGAN, individually and on behalf of Minor, N.M. | Case No: |
| Plaintiffs, | Judge: |
| v. | Magistrate Judge: |
| TOWN OF ISLIP, NEW YORK, | |
| Defendant. | |

**COMPLAINT**

BIZER & DEREUS
Attorneys for Plaintiff
Andrew D. Bizer (NY # 4208955)
andrew@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

## PRELIMINARY STATEMENT

This civil rights case is brought by DIANA MCGUIGAN, (hereafter "Ms. McGuigan"), individually and on behalf of her minor son, N.M., (hereinafter collectively "Plaintiffs"). Plaintiffs sue the TOWN OF ISLIP, NEW YORK (hereafter "Defendant"). Plaintiffs seek to remedy the discrimination by Defendant against N.M., a minor with diabetes and who needed reasonable modifications to Defendant's policies/practices so he could participate in Defendant's summer camp program. N.M. was excluded from the 2025 summer camp because Defendant refused to provide reasonable accommodations/modifications that were necessary to permit N.M. to participate in Defendant's summer camp.

Plaintiffs file this Complaint and pray for injunctive relief, damages, and attorneys' fees and costs. Plaintiffs sue the following: TOWN OF ISLIP, NEW YORK for declaratory and injunctive relief, damages, and attorneys' fees and costs pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* ("ADA") and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.* ("Section 504" or "Rehabilitation Act"). Plaintiffs also sue under the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law § 290 et seq.

In terms of damages, Plaintiffs seeks compensatory and nominal damages against Defendant. It is Plaintiffs' position that an award of damages against Defendant, regardless of the amount, would confer significant civil rights to the public because a judgment in Plaintiffs' favor would deter Defendant from discriminating against individuals with disabilities in the future.

## THE PARTIES

1. N.M. is an individual with a disability. N.M. has diabetes. N.M is six years old.
2. Ms. McGuigan is N.M.'s mother.

2

3. N.M. and Ms. McGuigan are residents of West Islip, New York.

4. N.M. is an individual with a disability under the ADA, Rehabilitation Act, and NYSHRL. N.M. has diabetes, which under the ADA, is a physical impairment. *See* 28 C.F.R. § 35.108 (b)(2). Moreover, under the ADA regulations, there is a "predictable assessment" that it should "easily be concluded" that diabetes substantially limits endocrine function. *See* 28 C.F.R. § 35.108 (d)(2)(iii)(H).

5. Ms. McGuigan, as N.M.'s mother, is an individual associated with a person with a disability.

6. Due to his disability, N.M. requires that his glucose be monitored, redirection to eat snacks, and that an adult administer insulin via a pump (and <u>not</u> via manual injection) on occasion throughout the day.

7. Defendant TOWN OF ISLIP is a local municipal entity in the State of New York. Upon information and belief, TOWN OF ISLIP is responsible for the operations of the Town of Islip Recreation Camp, which occurs in the Town of Islip.

8. TOWN OF ISLIP is a "public entity" within the meaning of 42 U.S.C. § 12131(1) and as such it is subject to Title II of the ADA.

9. On information and belief, TOWN OF ISLIP receives federal financial assistance and is therefore a covered entity under the Rehabilitation Act.

## JURISDICTION & VENUE

10. This is an action for relief pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. §12131 *et seq.*, (see also 28 U.S.C. § 2201 and § 2202), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 *et seq*. This Court is vested with original jurisdiction pursuant to 28 U.S.C. § 1331 and 1343.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the events which are the subject of this action took place in the Town of Islip, New York.

12. All events giving rise to this lawsuit occurred in the Eastern District of New York.

### COUNT I: VIOLATION OF TITLE II
### OF THE AMERICANS WITH DISABILITIES ACT

13. PLAINTIFFS reallege and reaver the preceding paragraphs as if they were expressly restated herein.

14. Upon information and belief, Defendant operates the Town of Islip Recreation Camp, which occurs in the Town of Islip.

15. Title II of the ADA requires that no qualified individual with a disability, on the basis of disability, be excluded from participation in, be denied the benefits of, or otherwise be discriminated against in the services, programs, or activities of a public entity.

16. The ADA requires that a public entity make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability.

17. On or about March 10, 2025, Ms. McGuigan enrolled her son, N.M., in the Town of Islip Recreation Camp which was scheduled to begin on July 14, 2025.

18. On or about March 18, 2025, N.M. was diagnosed with diabetes.

19. As a result of his disability, N.M. requires that his glucose be monitored, redirection to eat snacks, and that an adult administer insulin via a pump on occasion throughout the day.

20. When insulin is administered to N.M., it is performed via a device and <u>not</u> through a manual injection with a needle. The adult assisting N.M. must log into his phone with a provided

4

PIN number. The adult then clicks on the "Omnipod5" app and again enters the provided PIN. The adult then enters a code and the insulin is administered through N.M.'s pump.

21. Shortly after N.M. was diagnosed with diabetes, Ms. McGuigan called Defendant to update N.M.'s file so that N.M. could participate in the Town of Islip Recreation Camp in July of 2025.

22. Ms. McGuigan expressed that N.M. had recently been diagnosed with Type 1 diabetes. Ms. McGuigan explained that because N.M is six years old, N.M. was not self-sufficient and would require assistance with managing his diabetes. Ms. McGuigan explained that N.M. was currently receiving insulin injection, but that hopefully he would be on a pump soon which would be easier to administer.

23. Defendant told Ms. McGuigan that it was too early to discuss N.M.'s situation with the health director at that time, but Defendant assured Ms. McGuigan that N.M. could attend the Town of Islip Recreation Camp, and Defendant told her that the health director would reach out to her by the end of May.

24. On June 20, 2025, having not heard from Defendant, Ms. McGuigan reached out to Defendant and again explained her N.M.'s situation. The person she spoke with told her that someone from the Town of Islip Recreation Camp needed to contact the Department of Health and that the Town of Islip Recreation Camp did not have any other information for Ms. McGuigan.

25. On June 21, Ms. McGuigan received a call from someone working for Defendant. Ms. McGuigan was told that the only way N.M. could attend the Town of Islip Recreation Camp was if Ms. McGuigan remotely monitored N.M.'s blood glucose from a cell phone

application, and if Ms. McGuigan came to the camp as needed to administer insulin to N.M. Defendant's representative also stated that Ms. McGuigan would be obligated to attend field trips.

26. Ms. McGuigan explained that N.M. was utilizing an insulin pump and that a staff member would need to administer insulin through the pump so that N.M. could participate in the program like other students. Ms. McGuigan explained how difficult it would be for her to travel to the camp, potentially multiple times a day. Instead of offering to accommodate N.M., Defendant offered Ms. McGuigan a refund.

27. Defendant also stated that they could not assist N.M. with his insulin because they did not have a nurse. In response, Ms. McGuigan asked if she could train a staff member to administer insulin to N.M via the aforementioned phone app. The individual Ms. McGuigan was speaking to stated that the camp cannot be liable and are only authorized to administer "life-saving medications, like an epi-pen or asthma inhaler".

28. Later that day, June 21st, Ms. McGuigan spoke with an attorney for Defendant in an attempt to obtain an accommodation for N.M. so he could attend the camp. Ms. McGuigan explained the situation to the attorney. Instead of offering a modification or an accommodation, the attorney stated that Ms. McGuigan should check with N.M.'s doctor because said doctor "probably would not want him to attend camp[.]" During the conversation, the attorney also stated that the staff at the camp might not be "comfortable" assisting N.M. with his insulin "as they would be liable."

29. On July 1, 2025, in response to an email from the camp supervisor Jessica Degirolamo, Ms. McGuigan summarized the June 21st conversation and asked if this was still

Defendant's position.

30. Ms. McGuigan received no response.

31. On July 8, 2025, Ms. McGuigan sent an email entitled "Formal Request for Reasonable Accommodations Under the ADA and Section 504".

32. In the email, Ms. McGuigan stated as follows:

> Dear Thomas Owens, William F. Garbarino, and Jessica Degirolamo,
>
> As you know, I signed my son [N.M.] up for the Town of Islip's Recreation summer camp program. I was informed that the staff at the summer camp will not be permitted to administer his insulin via his pump for lunch/snack or monitor his blood glucose via his Dexcom. In my June phone call, I raised concern that [N.M.] was being discriminated against, and I was told that the camp cannot "be liable" for providing insulin or monitoring his blood glucose and that the camp staff can only administer "life saving medications."
>
> The Town of Islip's Recreation summer camp program is discriminating against Nicholas based on his disability and need for insulin administration, in violation of Title II of the Americans with Disabilities Act.
>
> Under the ADA, public entities cannot exclude individuals with disabilities from participation in activities or services. Diabetes is a recognized disability under the ADA. Your camp is required to make reasonable modifications to its policies and procedures to accommodate children with diabetes. In this circumstance, that includes accommodating [N.M.] by administer his insulin via pump and monitoring his blood glucose via his Dexcom. Unfortunately, several other summer camps have discriminated against children with diabetes, and the result has been civil rights cases and settlements:https://diabetes.org/advocacy/know-your-rights/diabetes-litigation-daycare-camps
>
> Excluding [N.M.] because of his diabetes and need for reasonable accommodation violates federal law. I urge you to immediately reconsider your position so that [N.M.] can attend your summer camp program. He is very eager to socialize with the other children and make new friends.
>
> Sincerely,
> Diana McGuigan

7

33. By and through this correspondence, Ms. McGuigan alerted Defendant to the nature of N.M.'s disability and she requested a reasonable modification/accommodation.

34. On Monday, July 14, 2025, having received no response to her email, Plaintiffs arrived at the Town of Islip Recreation Camp hoping that N.M. would be allowed to participate. Unfortunately, Plaintiffs were sorely disappointed.

35. Ms. McGuigan had two conversations, one with Ms. Degirolamo, the Town of Islip Recreation Camp director, and the other with Fallyn, the director of all camps.

36. In the conversation with Ms. Degirolamo, Ms. McGuigan explains that Defendant should be able to train someone to check N.M.'s insultation level and all they need to do is punch numbers into a phone and that no needles are involved. Ms. Degirolamo responded by stating that Defendant could not provide one on one attention for N.M.

37. Ms. McGuigan explained that Defendant's failure to accommodate N.M. violated the law. Nonetheless, Ms. Degirolamo did not provide any accommodation or modification to Plaintiffs.

38. Towards the end of the conversation, Ms. Degirolamo spoke directly to N.M. and stated that she wants him to come to camp but "its kind of a pain" to figure out all the details.

39. Unsatisfied, Ms. McGuigan proceeded to speak with Ms. Fallyn, the director of all camps.

40. During the conversation, Ms. Fallyn stated that under the department of health licensure Defendant is not required to give insulin – only lifesaving medicines. Ms. McGuigan responded that her son's endocrinologist confirmed insulin is lifesaving medicine.

41. Ms. Fallyn stated that other children with diabetes have parents tending to their children because Defendant does not have a school nurse on staff.

42. In discussing the need to periodically check N.M.'s glucose levels and administer insultation if necessary, Ms. Fallyn stated "How is my 16-21 year old staff administering that medication? We don't have the capacity. We don't have that kind of training. We don't administer that type of training."

43. During the conversation, Ms. Fallyn explained that she was concerned about Defendant's potential liability if N.M. is given the wrong dosage of insulin.

44. Ms. Fallyn did not provide any accommodation or modification to Plaintiffs.

45. Ultimately, Plaintiffs left, and N.M. was unable to attend the Town of Islip Recreation Camp.

46. In terms of damages, N.M. experienced exclusion and experienced disappointment about not being able to participate in a summer camp with other children. Ms. McGuigan experienced anxiety, emotional upset, and distress about her son being excluded on account of his disability.

47. Defendant did not train its staff so that it could accommodate N.M. Defendant could have—and should have—trained one or more of its employees to monitor his glucose level, redirect N.M. to eat snacks, and perform insulin administration as is necessary.

48. These modifications could have been easily made. Defendant attempted to blame the age of its staff—individuals who are between 16 and 21 years old.

49. This excuse is mere pretext, however, because individuals over the age of 18 are adults and are capable of being trained to monitor a child's glucose level, redirect a child to eat snacks, or administer insulin via a phone app.

50. Indeed, on a webpage of the U.S. Department of Justice entitled "Equal Access to Child Care," the federal government explains that basic obligations include making "reasonable modifications to their policies and practices to allow for children with disabilities to participate. Here are examples of some common reasonable modifications: … *Change a medication policy* so that a trained staff person may assist a child with diabetes in the administration of insulin or Glucagon, an emergency, life-saving medication for individuals with diabetes."

51. Upon information and belief, Defendant discriminated against N.M. in violation of the ADA by excluding and/or denying N.M. the benefits of their services, programs, and/or activities by failing to provide a reasonable modification or accommodation.

52. Plaintiffs desire for N.M. to attend Town of Islip Recreation Camp and recreation programs offered by Defendant in the future. Plaintiffs reside in West Islip.

53. Upon information and belief, Defendant continues to discriminate against N.M. by excluding and/or denying N.M. the benefits of its services, programs, and/or activities.

54. Ms. McGuigan has reasonable grounds for believing and concluding that N.M. will continue to be subjected to discrimination due to Defendant's failure to change its policies, procedures, and practices to accommodate N.M. in future years or at other camps, programs, or recreation activities.

55. Ms. McGuigan is presently deterred from attempting to enroll N.M. in Defendant's summer camp program for 2026 and beyond because it would be a futile gesture unless or until Defendant modifies its policies, procedures, and practices to ensure that the modifications sought through this lawsuit are consistently provided to N.M.

56. Plaintiffs have retained the undersigned counsel and are entitled to recover reasonable attorneys' fees, costs, and litigation expenses from Defendant pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 35.175.

57. Plaintiffs have suffered, and continue to suffer, irreparable injury by virtue of Defendant's invasion of the rights conferred on N.M. by the ADA.

58. Pursuant to 42 U.S.C. § 12131, *et seq.*, this Court is vested with authority to grant injunctive relief to Plaintiffs, including an order that Defendants make its programs and services readily accessible to and useable by N.M. and all others similarly situated.

59. Defendant's actions and inactions in violation of the ADA were done with deliberate indifference to the substantial risk of discrimination against N.M. and other children with disabilities.

60. In the alternative, Defendant acted with intent in that had knowledge of N.M.'s disability, his limitations, and his needed modification, but Defendant nonetheless failed to accommodate N.M.

61. Plaintiffs have suffered damages from Defendant's discrimination.

62. Under the ADA, Plaintiffs seek a recovery of expectation interest damages and nominal damages.

11

## COUNT II: VIOLATION OF THE REHABILITATION ACT

63. Plaintiffs adopt and re-allege the allegations contained in all proceeding paragraphs as if fully stated herein.

64. Upon information and belief, Defendant has been and continue to be recipients of federal financial assistance within the meaning of 29 U.S.C. § 794 and are therefore subject to Section 504 and its implementing regulations.

65. The Rehabilitation Act provides that:

> No otherwise qualified individual with handicaps in the United States, as defined by 7(8) [29 USCS § 706(8)], shall, solely by reason of his or her handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. 29 U.S.C. § 794(a).

66. Upon information and belief, as set forth herein, Defendant has violated Section 504 by N.M., solely by reason of his disability, from participation in, and denying him the benefits of, and has otherwise subjecting him to discrimination under, Defendant's programs and services.

67. Upon information and belief, a non-exclusive list of Defendant's violations of Section 504 against N.M. are evidenced by:

   A. denying N.M. access to, and the opportunity to participate in or benefit from, the programs and services offered by Defendant;

   B. otherwise limiting N.M. in the enjoyment of the rights, privileges, advantages and opportunities enjoyed by individuals without disabilities who participate in the programs and services offered by Defendant;

12

  C. denying N.M. reasonable modifications/accommodations necessary for M.M. to participate in the Town of Islip Recreation Camp.

68. Defendant's discriminatory actions and inactions in violation of Section 504 were done with deliberate indifference to the substantial risk of discrimination against N.M. and other children with diabetes.

69. Plaintiffs have suffered damages because of Defendant's discrimination.

70. N.M. has been, and without the relief requested herein will continue to be, denied access to the services, programs, and activities offered by Defendant solely by reason of his disability in violation of Section 504.

71. Plaintiffs have retained undersigned counsel for the filing and prosecution of this action. Plaintiffs are entitled to recover their attorneys' fees, costs, and litigation expenses from Defendant pursuant to 29 U.S.C. §794(b).

## COUNT III - VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW
## (NEW YORK STATE EXECUTIVE LAW, §§ 296-297)

72. Plaintiffs hereby incorporate by reference all allegations contained in all preceding paragraphs of this Complaint as if they were expressly set forth herein.

73. As the owner, manager, and/or proprietor of a place of public accommodation within the jurisdiction of the State of New York, Defendant is obligated to comply with the provisions of the NYSHRL, N.Y. Exec. Law § 296(2).

74. N.Y. Exec. Law § 296(2) provides: "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, . . . because of the . . . disability . . . of any person, directly or

indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

75. Defendant discriminated against N.M. on account of his disability.

76. Plaintiffs are aggrieved by an unlawful discriminatory practice, and thus are entitled to sue under the NYSHRL.

77. Defendant's conduct alleged herein violates the NYSHRL, N.Y. Exec. Law § 296(2).

78. Defendant has violated the NYSHRL by depriving Plaintiffs of the full and equal enjoyment of the accommodations, advantages, facilities, and privileges offered at the Defendant's summer camp program.

79. Defendant has violated the NYSHRL by failing to provide a necessary reasonable modification/accommodation.

80. Provision of the modifications/accommodations at issue was reasonably, could have been easily accomplished, and would not have placed an undue burden on Defendant.

81. Defendant's conduct has resulted in a cognizable injury to Plaintiffs.

82. Plaintiffs have been damaged and will continue to be damaged by this discrimination as more fully set forth above.

83. As a direct and proximate result of Defendant's unlawful discrimination in violation of the NYSHRL, Plaintiffs have suffered damages, as is set forth above.

84. Plaintiffs prays for judgment for injunctive relief, damages, and attorneys fees/costs to pursuant to N.Y. Exec. Law § 297(4), and all other relief allowed by law.

## TRIAL BY JURY

85. PLAINTIFFS request a Trial by Jury as to all claims and factual issues.

## PRAYER FOR RELIEF

86. WHEREFORE, PLAINTIFFS pray that:

   A. This Court issue a Declaratory Judgment that determines that DEFENDANT is in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq*;

   B. This Court issue a Declaratory Judgment that determines that the programs and activities facilitated by DEFENDANT is in violation of Section 504 of the Rehabilitation Act;

   C. This Court grant permanent injunctive relief against DEFENDANT including an order

   a. to make the service, program, and activity at issue otherwise readily accessible to and usable by individuals with disabilities, including N.M. to the extent required by the ADA, Rehabilitation Act, and NYSHRL; and

   b. to require DEFENDANT to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered programs, services, facilities, privileges, and advantages to individuals with disabilities, including N.M.

   D. This Court enter an Order directing DEFENDANT to alter and modify its programs and services to comply with the ADA, Section 504, and NYSHRL;

   E. This Court award Plaintiffs monetary damages (including compensatory and nominal damages) pursuant to Title II of the ADA, 29 U.S.C. § 794a(a)2,

NYSHRL for the harm caused by DEFENDANT'S discriminatory practices and conduct;

F. This Court award PLAINTIFFS reasonable attorneys' fees, costs, and litigation expenses pursuant to 29 U.S.C. § 794a(a)2, 42 U.S.C. § 12205, 28 C.F.R. § 35.175, and the NYSHRL; and

G. This Court order such other relief as the Court deems just and proper, and/or is allowable under Title II of the Americans with Disabilities Act, the Rehabilitation Act, and the NYSHRL.

Respectfully Submitted,

By: /s/ Andrew D. Bizer
ANDREW D. BIZER

BIZER & DEREUS
Attorneys for Plaintiff
Andrew D. Bizer (NY # 4208955)
andrew@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996